UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOANNE SABA, et al.,

            Plaintiffs,

    v.

BMW OF NORTH AMERICA LLC,

            Defendant.

Case No. 23-cv-05133-JST

**ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL**

Re: ECF No. 98

Now before the Court is Defendant BMW of North America LLC's ("BMW NA") renewed motion for judgment as a matter of law or, in the alternative, motion for new trial. ECF No. 98. The Court will deny the motion.

I.      **BACKGROUND**

This case concerns Plaintiffs' purchase of an allegedly defective used car. Plaintiff Joanne Saba purchased a certified pre-owned ("CPO") 2020 BMW X7 ("the Vehicle") from Peter Pan BMW in San Mateo, California on July 28, 2022. ECF No. 102-7 at 2. While Peter Pan BMW was the retailer, BMW NA was the distributor. [1] Included in the Vehicle's purchase price was a CPO warranty with an expiration date of September 23, 2024. ECF No. 102-9 at 2; ECF No. 102-7 at 2–3. BMW NA's expert, Joe Grijalva, testified that CPO coverage is offered directly by BMW NA. ECF No. 87 at 142. When Saba purchased the Vehicle, time remained on the new vehicle warranty that was issued to the Vehicle's first retail purchaser, which covered Saba until the expiration of that warranty on September 23, 2023. *Id.*; ECF No. 102-8 at 3.

---

[1] BMW NA is identified as a distributor in the parties' joint pretrial statement. ECF No. 44 at 2. A "distributor" is defined as "any individual, partnership, corporation, association, or other legal relationship that stands between the manufacturer and the retail seller in purchases, consignments, or contracts for the sale of consumer goods." Cal. Civ. Code §1791(e).

United States District Court
Northern District of California

After purchasing the Vehicle, Saba brought it back to the dealer for repairs on many occasions.  Six of these occasions, spanning from February 20, 2023 until February 12, 2024, concerned a "major latent defect in the powertrain system" which caused the vehicle to jolt when driven on hills or while shifting gears.  ECF No. 102 at 9–10; ECF Nos. 102-12 (February 2023), 102-13 (March 2023), 102-14 (May 2023), 102-15 (June 2023), 102-16 (July 2023), 102-17 (February 2024) (repair order service invoices).  Saba also presented the Vehicle to BMW for repairs three additional times for unrelated issues before the CPO warranty expired.  ECF No. 102 at 10; ECF Nos. 102-18 (September 2023; Saba complained of ticking noise and difficulty starting the car), 102-19 (May 2023; rattling noise in rear cargo area and sunroof shade unable to open), 102-20 (June 2024; rear seatbelt not retracting).

Plaintiffs filed this lawsuit under the Song-Beverly Act ("Song-Beverly" or "the Act") on October 6, 2023, alleging breach of express warranty, breach of implied warranty, and failure to conform the vehicle to warranty condition within 30 days as required by Section 1793.2(b) of the Act.  ECF No. 1.  BMW NA answered the complaint on October 27, 2023.  ECF No. 12.  After discovery concluded, the parties filed a joint pretrial statement on April 25, 2025 indicating that no legal issues were disputed.  ECF No. 44 at 14.  They also submitted joint jury instructions which referred to a "new motor vehicle" but did not require Plaintiffs to prove that the vehicle was new as an element of their claims.  ECF No. 41 at 31, 35, 39.  Notably, the jury instructions applied the statute's provisions governing the duration of implied warranties for new vehicles, not the shorter duration for used vehicles specified in Section 1795.5.  *Id*. at 36; *compare* Cal. Civ. Code § 1791.1(c) *with* Cal. Civ. Code § 1795.5(c).

On May 30, 2025—one court day before jury selection was scheduled to begin—Plaintiffs' counsel notified the Court that BMW NA's counsel had indicated the day prior that he intended to call a technician from the dealership as a witness.  ECF No. 101 at 7.  Plaintiffs requested that the Court exclude the witness as not timely disclosed.  ECF No. 97 at 11–12.  The witness, named Jared Taylor, had previously been identified on *Plaintiffs'* pretrial witness list only as "Technician 82" and not by name.  ECF No. 101 at 10.  Technician 82 was not listed on BMW NA's pretrial witness list, ECF No. 38 at 3–4, and BMW NA had never made the initial disclosure required by

Rule 26 of the Federal Rules of Civil Procedure, ECF No. 101 at 13.  After hearing, the Court granted the request to exclude and barred BMW NA from calling Taylor at trial.  ECF No. 101 at 13–15.

BMW NA did not raise the legal arguments made in the instant motion in its answer to the complaint, [2] in its case management statement, via a motion to dismiss or a motion for summary judgment, in its motions in limine, in its proposed jury instructions or proposed special verdict form, or at the pretrial conference.  ECF Nos. 12, 19, 36, 37, 41, 43, 44, 55.  On the third day of trial, however, BMW NA filed three motions for judgment as a matter of law—one for each cause of action.  ECF Nos. 74–76.  The next day, the parties gave closing arguments and the jury returned a verdict in Plaintiffs' favor on both the express and implied warranty claims.  ECF No. 80.  After the jury returned its verdict, BMW NA retracted its motions for judgment as a matter of law and filed the instant renewed motion for judgment as a matter of law, or in the alternative,motion for a new trial.  ECF Nos. 83, 98.

## II.    LEGAL STANDARD

Rule 50 of the Federal Rules of Civil Procedure authorizes the Court to grant judgment as a matter of law against a party if a reasonable jury would not have a legally sufficient evidentiary basis to find for that party.  Under Rule 50(a), a party may move for judgment on the pleadings before the case is submitted to the jury.  Fed. R. Civ. P. 50(a).  If the Court does not grant a motion for judgment as a matter of law under Rule 50(a), then the movant may file a renewed motion for judgment as a matter of law after the jury verdict but within 28 days of the entry of judgment.  Fed. R. Civ. P. 50(b).  When filing a renewed motion for judgment as a matter of law under Rule 50(b), the movant "may include an alternative or joint request for a new trial under Rule 59."  *Id*.

In ruling on the renewed motion, the Court may: (1) allow judgment on the verdict; (2)

---

[2] BMW NA's primary argument is that the Vehicle is not "new" within the meaning of the Act. One of twenty-three affirmative defenses listed in BMW NA's answer to the complaint, labeled "business use," alleges that "Plaintiffs' claims fail because the VEHICLE is not a 'new motor vehicle' as set forth in California Civil Code section 1793.22, subdivision (e)." ECF No. 12 at 9. Because the definition of "new motor vehicle" under Section 1793.22 requires personal use, this seems to have been an argument about the way the car was used rather than whether it was "new."

United States District Court
Northern District of California

order a new trial; or (3) direct entry of judgment as a matter of law. *Id.* To determine whether a directed entry of judgment or a new trial is appropriate, "[t]he appropriate test is whether 'the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Martinez v. Costco Wholesale Corp.*, No. 19-CV-1195-WVG, 2023 WL 1931836, at *8 (S.D. Cal. Feb. 10, 2023), *appeal dismissed*, No. 23-55245, 2023 WL 4043951 (9th Cir. Apr. 4, 2023) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003)).

A Court may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Those reasons include (1) a verdict that is contrary to the clear weight of the evidence, (2) a verdict that is based on false or perjured evidence, or (3) to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). "Erroneous evidentiary rulings and errors in jury instructions are also grounds for a new trial." *Muhammad v. Conner*, No. 10-CV-1449 YGR, 2012 WL 2428937, at *2 (N.D. Cal. June 26, 2012) (citation modified).

For the reasons explained below, the Court finds that the conditions for a directed entry of judgment or a new trial have not been met.

## III. DISCUSSION

### A. "New Motor Vehicle"

BMW NA first argues, for the first time in its motion for judgment as a matter of law, that the Court should set aside the jury's verdict because "the Song-Beverly Act's express warranty provisions apply only to "new motor vehicles" and "it is undisputed that Plaintiffs purchased the Vehicle used with over 37,000 miles on the odometer and merely a balance of the original manufacturer's warranty." ECF No. 98 at 10. While BMW NA is correct that the Vehicle is not a "new motor vehicle" within the meaning of the Act, Section 1795.5 of the Act applies its provisions to used motor vehicles. And although Section 1795.5 provides for some differences in the scope of protection for used vehicles, none of those differences is relevant here. BMW NA's new legal theory concerning the used nature of the vehicle therefore does not support entry of judgment as a matter of law or a new trial.

### 1.    Statutory Definition

"The Song-Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006). The Act generally covers "consumer goods," which are defined as "new" products or parts thereof. Cal. Civ. Code § 1791(a). Under the Act, "if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer." Cal. Civ. Code § 1793.2(d)(1).

The Act often deals with vehicles separately, although its vehicular provisions are analogous to its general provisions for consumer goods. Just as a "consumer good" is defined as "new," the Act's vehicular provisions apply to "new motor vehicles," which are defined by Section 1793.22(e)(2). Plaintiffs brought their claim for breach of an express warranty under Section 1793(d)(2), which provides that "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in [Section 1793.22(e)(2)], to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly" replace the vehicle or make restitution, and the buyer is free to elect either remedy.

In *Rodriguez v. FCA US LLC*, the California Supreme Court settled a divide among California courts on the meaning of a "new motor vehicle." 17 Cal. 5th 189, 204–05 (2024). The Act's definition of "new motor vehicle" includes "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." Cal. Civ. Code § 1793.22(e)(2). Some California courts had interpreted "other motor vehicle sold with a manufacturer's new car warranty" to include used cars that had been sold with a balance of the original manufacturer's warranty remaining, as Saba's car was sold to her. *See Jensen v. BMW of North America*, 35 Cal. App. 4th 112, 123 (1995). The California Supreme Court rejected that interpretation in *Rodriguez*, holding that "a motor vehicle purchased with an unexpired manufacturer's new car warranty does not qualify as a 'motor vehicle sold with a manufacturer's

new car warranty' under [Section 1793.22(e)(2)'s] definition of 'new motor vehicle' unless the new car warranty was issued with the sale." *Id*. at 196.

In reaching this conclusion, the Court interpreted "other motor vehicle sold with a manufacturer's new car warranty" by comparison to the two other classes of used cars covered by the Act—"dealer-owned vehicle[s]" and "demonstrator[s]." *Id*. at 198. The Court noted that manufacturers and their dealer-representatives uniquely treat these classes of vehicles as new by selling them with "the same type of manufacturer's warranty that accompany[ies] new cars." *Id*. The "key point," the Court held, is that "[i]n *every* case, the *first* customer to purchase or lease a demonstrator or dealer-owned vehicle receives a *new* warranty arising in *that* transaction, directly from the manufacturer." *Id*. at 198–99 (emphasis in original). "In other words, a warranty in this context is a guarantee made by the manufacturer to a retail buyer" and "the sale to a retail buyer is what gives rise to a new car warranty." *Id*. at 199.

The Court also noted that in amending the Act over the years, the legislature has maintained a careful distinction between used and new products, suggesting that "the phrase 'other motor vehicle sold with a manufacturer's new car warranty' was not intended to cover any used car with an unexpired new car warranty." *Id*. at 202. *Rodriguez* therefore held that a used car is a "new motor vehicle" under very specific circumstances—where "the new car warranty was issued with the sale." *Id*. at 196. To be a "new motor vehicle," a car must have been "sold to the first retail buyer with a manufacturer's new car warranty," "whether the manufacturer reinstates the original warranty period, extends the warranty's mileage, or simply sells the vehicle with a warranty *arising* in that first retail transaction." *Id*. at 199.

Here, Saba purchased the vehicle at issue with over 37,000 miles on it and merely a balance of the original manufacturer's warranty remaining. ECF No. 102-7 at 2 (sale contract noting that the car was used with 37,876 miles on the odometer); ECF No. 102-8 (BMW database noting beginning and end dates of new vehicle warranty). And critically, Plaintiffs purchased a car under a warranty which had already benefited an earlier retail purchaser. *Cf. Rodriguez*, 17 Cal. 5th at 198 (noting that they "key point" is that new motor vehicles "are not warranted prior to

United States District Court
Northern District of California

6

sale"). The Vehicle was not a "new motor vehicle" under Song-Beverly when Saba purchased it.[3]

### 2. Section 1795.5

In its opposition to the motion, Plaintiffs do not contest BMW NA's position that the Vehicle is not a "new motor vehicle." Instead, Plaintiffs argue that the vehicle was covered by a section of the Act—Section 1795—that extends much of the Act's protections to used consumer goods.

Section 1795 provides that "[n]otwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter" with several exceptions.[4] Two of these exceptions, discussed in relevant part below, involve the extent of the manufacturer's liability and the duration of any implied warranties. *See* Cal. Civ. Code § 1795.5(a),(c).

In its reply, BMW NA makes several arguments concerning Plaintiffs' new Section 1795.5 theory. First, it argues that it is not subject to the provisions of Section 1795.5, relying on *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340 (2019). ECF No. 103 at 4–5. BMW NA also argues that its liability should be limited to the period within which the CPO warranty was in effect and that the CPO warranty did not take effect until after the original new vehicle warranty expired. ECF No. 98 at 13–15; ECF No. 103 at 7–8. Next, BMW NA argues that the implied

---

[3] BMW NA argues that, in light of *Rodriguez*, the Court erred by instructing the jury not to consider evidence that the Vehicle was used. ECF No. 98 at 8, 18–19. But since the used nature of the Vehicle is undisputed, ECF No. 44 at 3–4 (joint pretrial statement acknowledging that the Vehicle was pre-owned), it was not an error to instruct the jury not to consider it in evaluating the other fact issues presented to them. The Court's error was in instructing the jury—*as the parties requested*—according to Plaintiffs' original theory of the case, wherein the Vehicle was subject to the general provisions of the Act (as opposed to the specific provisions for used goods in Section 1795.5).

[4] Plaintiffs argue that the CPO warranty is in fact a warranty. ECF No. 102 at 24–25. This is obviously true under *Gavaldon v. DaimlerChrysler Corp.*, which holds that contract provisions making guarantees to preserve or maintain the performance of a consumer good, at no extra charge to the purchaser, describing themselves as a "warranty," create an express warranty. 32 Cal. 4th 1246, 1255, 1258–59 (2004). The jury agreed. *See* ECF 102 at 24. The proposition that the CPO warranty is a warranty within the meaning of the Act is also not meaningfully disputed. *See* ECF No. 44 at 4 (joint pretrial statement describing the existence of a written warranty as undisputed); *but see* ECF No. 98 at 12 (BMW NA arguing groundlessly that the "[t]he CPO does not 'warrant' or 'guarantee' anything").

United States District Court
Northern District of California

warranty provisions of the Act under Section 1792 do not apply to it because liability is extended only to retail sellers and manufacturers, notwithstanding the provisions of Section 1795.5. ECF No. 98 at 15–17. Finally, BMW NA points out that no theory based on Section 1795.5 was pleaded in the complaint or presented to the jury. ECF No. 103 at 3–4. Resolving these issues, the Court finds that Plaintiffs' Section 1795.5 theory is correct and that BMW NA has not shown that a directed judgment or a new trial is warranted.

### a.   Viability of the Express Warranty Claim Under *Kiluk*

In disputing whether their Plaintiffs' claims fall within the scope of Section 1795.5, both parties rely on the California Court of Appeal's decision in *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334 (2019). *Kiluk* applied Section 1795.5 to used vehicles, so it is useful in dispelling any doubt about whether its provisions concerning "used consumer goods" apply specifically to used vehicles. *Kiluk*'s central holding, however, is not relevant because it involved a manufacturer, while BMW NA is undisputedly a distributor. *See supra* note 1.

In *Kiluk*, as here, the plaintiff purchased a certified preowned vehicle with time remaining on the original manufacturer's new vehicle warranty. *Id*. at 337. With the sale of the vehicle, Mercedes-Benz USA issued an additional certified preowned warranty that lasted one year from the end of the new car warranty. *Id*. Perhaps anticipating the California Supreme Court's decision in *Rodriguez*, the *Kiluk* court avoided deciding whether the remaining time on the original new vehicle warranty rendered the subject vehicle a "new motor vehicle" within the meaning of Section 1793.22(e)(2). *Id*. at 339–40. Instead, the court held that Mercedes-Benz was liable to the plaintiffs for breach of express warranty under Section 1795.5, which was not at issue in *Rodriguez*. Indeed, *Rodriguez* confirmed *Kiluk*'s continued viability. *Rodriguez*, 17 Cal. App. 5th at 202.

*Kiluk*'s central holding involved the fact that Mercedes-Benz USA was a manufacturer. By its text, Section 1795.5 only extends liability concerning used goods to distributors and retail sellers. Cal. Civ. Code § 1795.5 & (a). Commenting on this feature of the statute, the California Court of Appeal noted in *Kiluk* that "[t]he Song-Beverly Act provides similar remedies in the context of the sale of used goods, except that the manufacturer is generally off the hook." 43 Cal.

App. 5th at 339.  In *Kiluk*, the court found that Section 1795.5 nonetheless applied to Mercedes-Benz because Mercedes-Benz was so intimately involved in the sale process as to be in the position of a retailer.[5]  *Id*. at 340.

BMW NA argues that *Kiluk* does not apply because it is a distributor, while *Kiluk* involved the vehicle manufacturer.  ECF No. 103 at 4–5.  But BMW NA has it backwards.  Section 1795.5 explicitly extends coverage of the Act to retailers *and distributors* of used vehicles.  Cal. Civ. Code § 1795.5 (providing that "the obligation of *a distributor* or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers" with certain exceptions (emphasis added)).  *Kiluk*'s question about whether a manufacturer acting as a retailer could be liable is irrelevant here, where BMW NA is admittedly a distributor and covered by the plain text of Section 1795.5.  *See, e.g.*, ECF No. 44 at 2 (joint pretrial statement referring to BMW NA as a distributor).

As "a distributor . . . of used consumer goods in a sale in which an express warranty is given," BMW NA is liable to Plaintiffs under Section 1795.5.  Because Section 1795.5 provides that the "obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter" and a jury found that BMW NA, a distributor, breached those exact obligations, any error in instructing the jury on code provisions relating to "new motor vehicles" was harmless and does not justify a directed verdict or a new trial.

### b.    Scope of the Express Warranty Claim

In the alternative, BMW NA argues for judgment as a matter of law on the grounds that most of the repair orders in the record should be excluded from consideration and that those

---

[5] The *Kiluk* court held that Mercedes-Benz USA had put itself in the position of a retailer by selling directly to the public.  It "partnered with a dealership to sell used vehicles directly to the public by offering an express warranty as part of the sales package, which is a crucial incentive for buyers."  *Kiluk*, 43 Cal. App. 5th at 340.  In doing so, it "stepped into the role of a retailer and was subject to the obligations of a retailer under Section 1795.5."  *Id*.  In this case, Plaintiffs argue that BMW NA satisfies this test by "partner[ing] with its authorized dealerships to sell CPO warranted vehicles."  ECF No. 1202 at 22–23.  While Plaintiffs' evidence on this point is thin, *see* ECF No. 103 at 5 (BMW arguing the evidence was inadequate), that is irrelevant because BMW NA is a distributor and is therefore expressly covered by the terms of Section 1795.5, unlike the manufacturer at issue in *Kiluk*.

United States District Court
Northern District of California

remaining cannot support liability under Song-Beverly.  ECF No. 98 at 13-14.  It argues that only the repair orders which took place during the CPO warranty period should count towards its liability for breach of express warranty.  *Id*. at 13.  It then asserts that the CPO warranty only took effect after the original new vehicle warranty lapsed in September of 2023.  *Id*. at 13–14; ECF No. 103 at 7–8.  Because the repair orders that took place after the new vehicle warranty lapsed but before the CPO warranty lapsed did not involve multiple failed attempts to solve the issues identified, BMW NA argues that they are insufficient to give rise to Song-Beverly liability.  ECF No. 98 at 14–15; ECF No. 103 at 8.

Assuming without deciding that BMW NA is correct that liability must stem from the CPO warranty period,[6] the Court finds that BMW NA has not justified judgment as a matter of law.  Rather, BMW NA has only shown that a legal theory it failed to raise until trial was nearly over might have supported a defense verdict, but only if the jury resolved disputed evidence in its favor.  The Song-Beverly Act requires a plaintiff to plead and prove that "the manufacturer or its representative in this state [did] not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts."  Cal. Civil Code § 1793.2(d)(1).  Because "attempts" is plural, a single failed attempt cannot constitute a violation of the Act.  *Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1207–08 (2003).  Moreover, as BMW NA argues, unrelated, single repairs cannot be aggregated to prove liability under the Song-Beverly Act.  ECF No. 98 at 15.  Rather, "for Plaintiff to be entitled to relief for any particular problem with her [BMW], she must show that she brought the car in to [BMW] for the repair of that particular problem on more than one occasion."  *Brownfield v. Jaguar Land Rover N. Am., LLC*, 584 F. App'x 874, 875 (9th Cir. 2014); *see also Treuhaft v. Mercedes-Benz USA, LLC*, Case No. 2:20-cv-11155-SVW-GJS, 2021 WL 2864877, at *3 (C.D. Cal. July 6, 2021) ("To constitute a 'reasonable

___

[6] BMW NA argues that "[i]f Plaintiffs were able to stack the repair orders which took place during the manufacturer's new car warranty with the repair orders that took place during the CPO, the effect would be to resurrect the very claim that *Rodriguez* prohibits."  ECF No. 98 at 13. *Rodriguez* prohibited suits against the manufacturers by secondhand purchasers, while Plaintiffs here seek to sue the distributor.  Still, BMW NA may be correct.  Song-Beverly's protections are premised on an express warranty arising from the sale of a product and the Act holds liable the party who issued the warranty.  *See Rodriguez*, 17 Cal. 5th at 202.  Here, the only warranty arising from the sale of the product to Plaintiffs is the CPO, not the original manufacturer's warranty.

number of repair attempts,' a plaintiff must present the vehicle to the manufacturer or seller more than once, complaining of the same defect each time." (citing *Robertson*, 144 Cal. App. 4th at 799).

Plaintiffs seem to argue that repeat visits satisfy Section 1793.2(b) even if those visits deal with unrelated issues. ECF No. 102 at 26.[7] Their position contradicts the authorities discussed above and makes little sense: the statute requires that warrantors of consumer goods restore those goods to warranty conditions, but a consumer facing multiple product issues that are each resolved after a single visit has already been made whole.

During the alleged CPO period—September 23, 2023 until September 23, 2024—the record documents three repair order visits. On February 12, 2024, Saba presented the Vehicle to repair a twisted seatbelt and the jolting problem she had complained of in previous repair orders. ECF No. 102-17 at 2. On May 13, 2024, Saba presented the Vehicle to repair rattling and the sunroof shade's failure to open. ECF No. 102-19 at 2. On June 10, 2024, Saba complained of a different seatbelt's failure to retract. ECF No. 102-20 at 2.[8] Because the CPO warranty period does not appear to contain repeat visits for the same issue, Plaintiffs may not have a claim based on only those repair visits that occurred after September 23, 2023.

When the CPO warranty began, however, is a fact question that is not only subject to reasonable dispute but in fact appears to favor Plaintiffs. BMW NA bases its position that the CPO warranty did not begin until the original manufacturer's warranty lapsed—which occurred on September 23, 2023, *see* ECF No. 102-8 at 3—on the testimony of its corporate witness. ECF No. 98 at 13–14 (citing ECF No. 85 at 68). Plaintiffs counter that the CPO warranty was active starting on the purchase date of July 28, 2022. ECF No. 102 at 8. They cite the "BMW Certified

---

[7] Plaintiffs argue that BMW NA's position that standalone repair appointments cannot engender a Section 1793.2(d) claim was already rejected by the Court in its ruling on Motion in Limine No. 1. ECF No. 102 at 26-27. This misrepresents the Court's order on that motion, which held only that a single presentation of the defect may suffice under the distinct Song-Beverly provision at Section 1793.2(b), which sets a time frame for service and repair to commence. ECF No. 53.

[8] BMW NA's motion also discusses two other repair visits that it states occurred after the original manufacturer's warranty expired, *see* ECF No. 98 at 14, but these in fact occurred before the original warranty expired (Repair Order No. 789602 occurred on September 15, 2023) or after the CPO warranty lapsed (Repair Order No. 821208 occurred on March 3, 2025) and would therefore not fall within the alleged period during which the CPO warranty was active.

United States District Court
Northern District of California

United States District Court
Northern District of California

Unlimited Mileage Statement of Certification and Coverage" provided to Joanne Saba with the sale, as well as an internal BMW database. *Id*. The sale document does not list an inception date for the CPO warranty but notes the sale date of July 28, 2022 and the CPO warranty expiration date of September 23, 2024. ECF No. 102-9 at 2. The database lists three dates for the CPO warranty: an "effective date" of September 23, 2019, an "enrollment date" of June 5, 2022, and an expiration date again of September 23, 2024. ECF No. 102-8 at 3. Plaintiffs also cite their cross-examination of BMW NA's expert, Joe Grijalva, who testified that the CPO program provides coverage for 60 months from the original purchase date and that Peter Pan BMW enrolled the Vehicle in the CPO program on June 5, 2022, weeks before it sold the car to Joanne Saba. ECF No. 102 at 8 (citing ECF No. 87 at 148–50). These dates map onto the database's "effective date" and "enrollment date."[9]

Plaintiffs therefore appear to have the better argument—that the CPO warranty was effective from the original date of purchase for five years, but was activated or enrolled by the dealer before sale to Joanne Saba and became available for her use upon purchase. And regardless, BMW NA did not raise the argument that liability must stem from repair orders made during the CPO warranty period until their motion for judgment as a matter of law, so the issue is waived.

A Rule 50 motion for judgment as a matter of law requires the Court to find that a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue" and is certainly inappropriate given the substantial evidence in favor of Plaintiffs on this point. Fed. R. Civ. P. 50. Given the extensive evidence favoring Plaintiffs' position regarding the CPO's start date, BMW NA cannot make that showing. While erroneous legal rulings or incorrect jury instructions could justify a new trial under Rule 59, *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990), there were no erroneous rulings here because the BMW NA never argued that the Vehicle was a used vehicle or that its status as such limited the scope of the

_____

[9] Plaintiffs also assert that the jury found that the CPO warranty went into effect on the vehicle purchase date of July 28, 2022, ECF No. 102 at 25–26, but it is not clear which of the jury's special verdict responses necessitates this conclusion. The jury found that there was an express warranty in place, but did not specify the dates that the warranty was active. ECF No. 80 at 2.

express warranty coverage. And to the extent that the jury instructions were erroneous, any error was invited. A party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction." *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1493 (9th Cir. 1986) (citations omitted). Thus, BMW NA may not obtain a new trial because of jury instructions it affirmatively requested.

### c.    Implied Warranty Claim Under 1795.5

BMW NA argues that Section 1792 allows recovery only for a breach of an implied warranty against a "manufacturer" or a "retail seller," but not against a distributor. ECF No. 98 at 15–16. It therefore argues that the Court erred in instructing the jury not to consider whether BMW was a distributor rather than a manufacturer or retailer.

This argument does not survive application of Section 1795.5, because that Section extends manufacturers' obligations under Section 1792 to reach distributors that sell used vehicles with express warranties like BMW NA did here. Cal. Civ. Code § 1795.5 (providing that "the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter" subject to exceptions). In its reply, BMW NA argues that Section 1795.5 is a "a statute pertaining to express warranties" and therefore does not "override[] the statute pertaining to implied warranties (Civil Code 1792) to impose implied warranties on an entity ('distributor') expressly carved out from the implied warranty statute." ECF No. 103 at 9. But the text of Section 1795.5 could not be clearer that "the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter." It does not restrict its effect to provisions exclusively involving express warranties. *Id.*

### d.    Plaintiffs' Waiver

Plaintiffs failed to advance their theory based on Section 1795.5 at any point before they were asked to respond to BMW NA's motion for judgment as a matter of law. On that basis, BMW NA argues that they should not be allowed to do so now. ECF No. 103 at 3. Had BMW NA not waited until the fourth day of trial to raise to a brand-new legal defense based on

United States District Court
Northern District of California

governing authority that it did not disclose to the Court, the Court would have more sympathy for this argument.

It is true that Plaintiffs' complaint, proposed jury instructions, and proposed special verdict form are inconsistent with their new position based on Section 1795.5. The complaint alleges that the Subject Vehicle is a "consumer good" within the meaning of the Act. ECF No. 1 ¶¶ 20, 28. Consumer goods are defined by Section 1791(a) in relevant part as "any *new* product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1791(a) (emphasis added). The complaint also once refers to the Vehicle explicitly as a "new motor vehicle." ECF No. 1 ¶ 34 ("Defendant BMW of North America, LLC has failed to either promptly replace the new motor vehicle or to promptly make restitution."). The complaint never identifies the vehicle as a used car. It also cites a number of provisions of the Act that apply to "consumer goods" or "new motor vehicles" without once referencing Section 1795.5. *See* ECF No. 1 ¶ 42 (citing § 1792); *id.* ¶¶ 47–51 (referencing § 1794). Plaintiffs also submitted proposed jury instructions which referenced "new motor vehicles" and listed the implied warranty period applicable to new motor vehicles instead of the distinct time period applicable to used consumer goods under Section 1795.5. ECF No. 41 at 31, 35, 36, 39. Plaintiffs clearly did not advance a theory based on Section 1795.5. *See Harris v. FCA US LLC*, No. 8:24-cv-02676-FWS-ADS, 2025 WL 1837732, at *4 (C.D. Cal. July 2, 2025) (finding that a complaint was too vague to put the defendants on notice of a theory of liability based on Section 1795.5).

BMW NA argues that "allowing Plaintiffs to change course after the trial has ended" creates "obvious due process problems" because "BMW NA's entire defense of this action would have been different." ECF No. 103 at 4. But BMW NA waited until the fourth day of trial to raise a legal defense based on governing precedent that it had known about for at least six months.[10]

---

[10] Defense counsel not only knew about, but publicly touts his experience litigating, *Rodriguez*. *See* https://www.clarkhill.com/people/georges-a-haddad/, permalink https://perma.cc/CT2N-LAZJ (defense counsel's website advertising his work briefing summary judgment and the intermediate appeal in *Rodriguez*). Counsel has since repeatedly encountered and applied the California Court of Appeal's holding in *Rodriguez*—which the California Supreme Court upheld near the end of 2024—in other matters in which he was counsel of record. *See, e.g.*, *Sassoon v. BMW of N. Am.*,

*United States District Court*
*Northern District of California*

Both sides in this case came barreling into court on the day of trial having done very little pretrial preparation, armed with reused sets of motions in limine and jury instructions that fit poorly or not at all the facts of the specific case they were trying.  On that record, BMW NA cannot show that it would have tried the case differently had it been made aware of Plaintiffs' 1795.5 theory earlier.[11]

### B.      Exclusion of Jared Taylor as a Witness

BMW NA argues that the Court erred in excluding repair technician Jared Taylor from testifying at trial.  ECF No. 98 at 19–21.  Federal Rule of Civil Procedure 26(a) requires parties to disclose to each other "the name . . . of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  Rule 37(c)(1) then provides that a party who "fails to disclose information required by Rule 26(a)" is not "permitted to use [that information] as evidence at trial" unless the failure was substantially justified or is harmless.  The Ninth Circuit "give[s] particularly wide latitude to the [district court's] discretion" to issue this or other sanctions under Rule 37(c)(1).  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

In excluding Taylor, the Court relied on several facts.  First, Jared Taylor's name was never included in an initial disclosure because BMW had never provided one.  ECF No. 101 at 13.  Second, Jared Taylor's name was not included on the defendant's list of witnesses submitted with the joint pretrial statement.  *Id*.  Third, although Jared Taylor was included in *Plaintiffs'* witness list, he was described only as "Technician 82."  *Id*. at 9, 12–14; ECF No. 38 at 3.  Plaintiffs were not made aware of Taylor's identity until the Court heard arguments from the parties about whether Technician 82 should be admissible as a defense witness; this hearing took place on Friday, May 30, after the jury venire had been selected and one court day before trial.  ECF No.

---

*LLC*, No. CV-22-8641-AGR, 2023 WL 11724905, at *1 (C.D. Cal. Dec. 20, 2023); *Jenkins v. FCA US LLC*, No. 23-CV-01075-JSW, 2024 WL 1141002, at *3 (N.D. Cal. Mar. 15, 2024); *Kargar v. BMW of N. Am., LLC*, No. 2:22-CV-03047-SPG-KS, 2024 WL 3915218, at *2 (C.D. Cal. Aug. 6, 2024).

[11] BMW NA also argues that while Federal Rule of Procedure 15(b) allows for amendment of pleadings to conform to evidence presented at trial, such amendment requires the absence of prejudice to the counterparty or that counterparty's consent.  Fed. R. Civ. P. 15(b)(1),(2); *see Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1013 (9th Cir. 2004).  Plaintiffs have not requested amendment of their complaint.

United States District Court
Northern District of California

69; ECF No. 101 at 9–11.  As the Court held, BMW NA offered no valid justification for its failure to disclose Taylor's identity to Plaintiffs.  ECF No. 101 at 13.

The Court also found that BMW's failure to disclose Taylor as a witness was prejudicial. The eleventh-hour addition caused obvious prejudice to the Court's schedule and the Plaintiffs' trial strategy.  ECF No. 101 at 13.  BMW now argues that there was no threat of prejudice to Plaintiffs because Taylor "personally worked on" the Vehicle and "was referenced in numerous trial exhibits."  ECF No. 98 at 20.  But this still does not provide Plaintiffs with notice of Defendant's intent to call Taylor or what the substance of his testimony would be.  In BMW's motion, it argues that there was no prejudice because "questioning, cross, and redirect" "would not have taken more than a couple hours."  ECF No. 98 at 20.  But this misses the point—the Court concluded that Plaintiffs were prejudiced because they would have had to depose Taylor in the middle of trial and then identify and put forward witnesses to oppose Taylor's testimony, which would have been difficult or impossible.  ECF No. 101 at 14.  Plaintiffs asserted, and the Court found, that admitting Taylor would cause both prejudice and surprise.  *See id*. at 7–8.  Nothing in BMW NA's motion provides a basis for reversing that conclusion.

BMW NA argues that listing Taylor was unnecessary because he was included within Saba's list of witnesses, and both lists were included in a joint pretrial statement.  For the many reasons the Court placed on the record, that argument is unavailing.  Most importantly, Taylor was *not* on the Plaintiffs' list—someone identified as "Technician 82" was on that list, but Plaintiffs didn't even know the witness's real name.

During trial, BMW NA moved for the Court to reconsider its exclusion of Jared Taylor on the grounds that Taylor could "speak to the various test drives that he conducted with Ms. Saba" and address arguments raised by Plaintiffs' expert concerning whether certain issues with the vehicle were adequately diagnosed.  ECF No. 87 at 70.  The Court determined that the prejudice to Plaintiffs from allowing Taylor to testify at that juncture would be even greater and that the issues which he would address had been disclosed in Plaintiffs' expert's report, so BMW NA should have put him on the witness list had they wished to call him.  ECF No. 87 at 70–71.  BMW NA now reiterates their argument that they were prejudiced by the exclusion of Taylor.  But as the

United States District Court
Northern District of California

Court now rules for the third time, if they did not wish to be prejudiced then they should have put Taylor on their witness list.  The Court did not abuse its discretion in excluding this witness.

**Conclusion**

For the reasons set forth above, Defendants have failed to show that either judgment as a matter of law or a new trial is warranted.  The motion is therefore denied.

**IT IS SO ORDERED.**

Dated:  March 25, 2026



United States District Court

JON S. TIGAR
United States District Judge