United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOANNE SABA, et al.,
Plaintiffs,
v.
BMW OF NORTH AMERICA LLC,
Defendant.

Case No. 23-cv-05133-JST

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**

Re: ECF No. 120

Before the Court is Plaintiff Joanne and Jacob Saba's motion for attorney's fees under California Civil Code § 1794(d). ECF No. 120. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

This is a lemon law case concerning a certified pre-owned 2020 BMW X7. Plaintiffs filed this lawsuit under the Song-Beverly Act ("Song-Beverly" or "the Act") on October 6, 2023, alleging breach of express warranty, breach of implied warranty, and failure to conform a vehicle to warranty condition within 30 days as required by Section 1793.2(b) of the Act. ECF No. 1. BMW NA answered the complaint on October 27, 2023. ECF No. 12. On July 28, 2023, prior to filing suit, Plaintiffs asked BMW to voluntarily repurchase the subject vehicle in light of several failed repair attempts, but BMW refused. ECF No. 120-1 ¶ 34. Plaintiffs selected California Consumer Attorneys, P.C. ("CCA") to represent them. *Id.* ¶ 35.

The case proceeded through discovery, which required CCA to review the documented repair efforts, correspond with Plaintiffs, utilize standard discovery tools, and meet and confer to resolve disputes. ECF No. 120 at 13. After discovery concluded, the parties participated in a settlement conference and prepared for and proceeded to trial. ECF No. 120 at 14–16.

United States District Court
Northern District of California

During trial, the parties submitted joint jury instructions which referred to a "new motor vehicle" but which did not require Plaintiffs to prove that the vehicle was new as an element of their claims. ECF No. 41 at 31, 35, 39. Notably, the jury instructions applied the Act's provisions governing the duration of implied warranties for new vehicles, not the shorter duration for used vehicles specified in Section 1795.5. *Id.* at 36; *compare* Cal. Civ. Code § 1791.1(c) *with* Cal. Civ. Code § 1795.5(c).

On the third day of trial, BMW NA filed motions for judgment as a matter of law arguing for the first time that the statutory provisions on which the parties' jointly proposed jury instructions did not apply to the subject vehicle because it was pre-owned. ECF Nos. 74–76. After the jury returned a verdict in Plaintiffs' favor the next day, BMW NA retracted its motions for judgment as a matter of law and filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial under Rule 59. ECF Nos. 83, 98. The Court resolved that motion in Plaintiffs' favor, but only because a parallel statutory provision applied most of the Act's new car provisions to used cars. ECF No. 114 at 6–12. There was no doubt that CCA had misled the Court and submitted incorrect jury instructions.

After the parties received the Court's ruling on the motion for a new trial, Plaintiffs also drafted and filed a motion to enforce the judgment in this case, citing BMW's delay in scheduling a handoff and buyback of the subject vehicle. ECF No. 115.

On May 20, 2026, Plaintiffs filed the present motion for attorneys' fees under Section 1794(d) of Song-Beverly. ECF No. 120. BMW opposed on June 3, ECF Nos. 122, 126, and Plaintiffs replied on June 10, 2026, ECF No. 123. The Court took the motion under submission without a hearing. ECF No. 132.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(a).

## III. LEGAL STANDARD

A prevailing buyer under the Song-Beverly Act is entitled recoup all reasonable attorney's fees, costs and expenses. Cal. Code Civ. Proc. § 1032(a)(4); Cal. Civ. Code, § 1794(d); *Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1158 (1997), *disapproved of on other grounds by*

*Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246 (2004), *as modified* (June 23, 2004).

"The determination of what constitutes a reasonable fee generally 'begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.'" *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000), *as modified* (June 2, 2000)). The "prevailing buyer has the burden of showing that the fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24, 34 (2019) (internal quotation marks omitted) (collecting cases).

It is well-established that appropriate hourly rates are generally based on "comparable legal services in the community." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citing *Serrano v. Priest*, 20 Cal.3d 25, 49 (1977)); *see also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) (holding that the fee applicant must show that "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation").

"[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal. 4th at 1132 (citation omitted); *see also Donahue v. Donahue*, 182 Cal. App. 4th 259, 271 (2010) ("A trial court may not rubber stamp a request for attorney fees, but must determine the number of hours reasonably expended.").

Once the Court has calculated the lodestar amount, it must "ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470, 208 Cal. Rptr. 3d 646, 652 (2016) (quoting *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 99, 104 (1994)). "These circumstances may include . . . the complexity of the case and procedural demands, the skill exhibited and the results achieved," *id.*, and "the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 322 n.12 (1983). Where the circumstances show that the lodestar amount is unreasonable, the Court

adjusts the award by applying an upwards or downwards "multiplier" to the lodestar amount. *Mikhaeilpoor v. BMW of N. Am., LLC*, 48 Cal. App. 5th 240, 247 (2020). Such a decision should be supported by detailed findings. *Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856, 883 (N.D. Cal. 2019) (quoting *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).

"To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum*, 24 Cal. 4th at 1138.

## IV. DISCUSSION

### A. Market Rates for Comparable Legal Services in the Community

In their motion, Plaintiffs argue that Wolter Kluwer's 2025 Real Rate Report accurately captures the appropriate market rates for the legal services CCA provides. ECF No. 120 at 22.[1] Plaintiffs also contend that "[t]he hourly rates should be considered in the context of the rates charged by Plaintiff's attorneys in the metropolitan community in which they practice, as opposed to the case venue." *Id.* (citing *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 399 (2005)). They therefore assert that counsel's rates should be approved because they are lower than those charged by Los Angeles litigation partners (who bill $665–$1,079) and associates (who bill $564–$895). *Id.*

*Horsford* does not support awarding Los Angeles rates here. Rather, it held that awarding out-of-town rates to out-of-town attorneys is only appropriate where the party seeking fees makes an adequate showing that he made "a good faith effort to find local counsel." 132 Cal. App. 4th at 398–99. Plaintiffs do not argue that they were unable to find local counsel. Evidently, this is not the first time that CCA has misused *Horsford* in this manner. Just last year, a court in the Eastern District of California notified the exact counsel who worked on this case that "*Horsford* is distinguishable . . . as the plaintiff in that case diligently and unsuccessfully sought local counsel

[1] Plaintiffs also attach to their motion a United States Consumer Law Attorney Fee Survey Report, ECF No. 120 at 22, ECF No. 120-3, but they do not describe the contents of this report or otherwise direct the Court's attention to any particular information contained in it.

before hiring a more expensive San Francisco attorney to litigate significant claims involving racial discrimination by a local public entity." *Silva v. Ford Motor Co.*, No. 2:24-CV-03674-DJC-SJR, 2025 WL 2879624, at *4 (E.D. Cal. Oct. 8, 2025). In light of CCA's miscitation of the law in connection with the jury instructions, it does it does itself no favors by misciting *Horsford* after another court has told them not to. That case is not helpful, and the Court finds that San Francisco Bay Area rates provide the appropriate comparator.

In its opposition, BMW agrees that the Real Rate Report provides appropriate benchmarks; other courts have likewise concurred. ECF No. 126 at 7; *see Eksouzian v. Albanese*, No. CV 13 728 PSG (AJWx), 2015 WL 12765585, at *4–5 (C.D. Cal. Oct. 23, 2015) (finding the Real Rate Report to be a good "barometer" because it "identifies attorney rates by location, experience, firm size, areas of expertise, and industry" (quoting *Hicks v. Toys 'R' Us-Delaware, Inc.*, No. CV13-1302-DSF JCGX, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014)). BMW asserts, however, that a more appropriate benchmark for Plaintiffs' counsel's rates is those charged by consumer attorneys, not general litigation attorneys. ECF No. 126 at 7. Indeed, Plaintiffs' counsel are lemon law specialists. BMW would use the Real Rate Report's 2025 entry for median nationwide rates for consumer attorneys –$395 for partners and $295 for associates. ECF No. 126 at 7; ECF No. 122-1 at 7.

In reply, Plaintiffs argue that "generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." ECF No. 123 at 8 (quoting *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (2008)). While true, this contradicts the position Plaintiffs took in their opening brief. ECF No. 120 at 22. Plaintiffs make no effort to reconcile their positions.

In any case, Plaintiffs' reply also provides no evidence of what the appropriate rates in the Bay Area are for the type of work Plaintiffs' counsel performs. It cites *Prison Legal News v. Schwarzenegger*, which approved hourly rates, for work performed in 2008, of "$740 for a law firm partner who graduated from law school in 1962; $370 for a law firm associate who graduated in 2001; $340 for a law firm associate who graduated in 2003; and $170 for a law firm paralegal" in complex litigation concerning the free speech and due process rights of incarcerated people.

United States District Court
Northern District of California

608 F.3d 446, 448, 450, 454 (9th Cir. 2010). *Prison Legal News* also noted that the proper comparator is "all attorneys in the relevant community engaged in 'equally complex Federal litigation.'" *Id*. at 455. Plaintiffs do not argue that the lemon law litigation in which they engage is just as complex as a prisoner's rights case that reached the Ninth Circuit.

In their opening brief, Plaintiffs provide a second type of evidence of appropriate rates: citations to orders approving certain rates in other lemon law cases. They do not describe or analyze these cases in their motion, writing only that "counsel includes orders from Federal and State Courts across California" that "reviewed the invoices, approved the hourly rates, and agreed that almost all the billed hours are reasonable." ECF No. 120 at 33. A review of those cases, however, shows the cases to be unhelpful because they are neither from the Northern District nor any state court within it. ECF Nos. 120-7–120-13. As CCA acknowledges in the reply, the Ninth Circuit has reversed another court in this district for improperly "rel[ying] on cases from the Southern District of Ohio, the District of Oregon, and various New York districts — none of which represented the relevant legal community of the Northern District of California." ECF No. 123 at 8 (citing *Camacho*, 523 F.3d at 979).

The Court is thus left in an uncomfortable position. It has been presented with Los Angeles rates for work that is more complex than that Plaintiffs' counsel performs, then nationwide rates for the work of the appropriate complexity, and then an improper new (albeit correct) argument that San Francisco Bay Area rates should apply, unaccompanied by evidence beyond the rates affirmed by the Ninth Circuit in 20-year old prisoner's rights litigation. The Court will not search through the appended fee surveys to find the correct benchmarks when the parties have not done so. "It is not the Court's responsibility to rummage through the record on plaintiff's behalf." *Jimmie's Limousine Serv., Inc. v. City of Oakland*, No. 04-cv-03321-WHA, 2005 WL 2000947, at *5 (N.D. Cal. Aug. 18, 2005) (citing *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.2001), *aff'd*, 252 F. App'x 847 (9th Cir. 2007). Nor will it perform independent research to determine the appropriate fees rate for lemon law or consumer protection attorneys in the Bay Area. In short, the Court's options aren't great, but under the circumstances, the nationwide rates identified by BMW—which appropriately account for the complexity of work

but not the location of the attorneys or the case—are the best option.

This approach aligns with that of other courts. For instance, in *Arias v. Ford Motor Co.*, the court observed that the 2018 Real Rate Report showed that Los Angeles "partners practicing general litigation have an hourly rate ranging from $220 to $715, and associates from $175 to $425," but "more relevant to Plaintiff's counsel's area of practice, partners litigating consumer goods cases nationwide have a lower average hourly rate of between $254 and $350, and associates between $205 and $265." No. EDCV181928PSGSPX, 2020 WL 1940843, at *4 (C.D. Cal. Jan. 27, 2020). "As such, the Court adjust[ed] the rate for partners . . . to $325 across the board, and associates . . . to $225 . . . because they fall within the wide range of rates that litigators generally charge in Los Angeles, while also reflecting the usual rate for Plaintiff's counsel's area of specialty." *Id*. In *Arias*, the court chose numbers at the top of the nationwide range because they were still within the litigation range in the venue community. Here, no data has been presented concerning the appropriate range for lemon law lawyers or even general litigators in the Bay Area, so the court utilizes the median values of $395 and $225 presented by BMW.

These rates are likely low for the Bay Area, which is an expensive legal market. But Plaintiffs did nothing to satisfy their burden of providing Bay Area rates for comparable legal work. Moreover, as the Court explains below, the circumstances of this case justify a downwards lodestar adjustment, so even if Plaintiffs had presented viable evidence (or the Court had sought such evidence out on its own accord), the result would likely have been the same.

**B. Deductions to Hours Billed**

Citing the Court's duty to carefully review the hours billed and remove unreasonable charges, BMW seeks several deductions to the hours billed. *Ketchum*, 24 Cal. 4th at 1132.

**1. Motion to Compel Deposition of BMW's Person Most Knowledgeable**

BMW argues that CCA should not be compensated for the approximately five hours spent drafting a motion to compel the deposition of BMW's "person most knowledgeable" ("PMK") and related documents because no such motion was ever filed and a timekeeping entry for "Email correspondence with opposing counsel re: scheduling of PMK Deposition" postdates the drafting. ECF No. 126 at 10. Predating the drafting entry, however, are several entries reflecting a dispute

over the PMK deposition and attempts to resolve it without judicial input. ECF No. 120-2 at 4–5. Although the meet and confer process was ultimately successful, the Court cannot conclude under the circumstances that the hours spent drafting the motion to compel were not justified.

**2. Calendaring and Auditing**

BMW points out that certain activities may be improperly included in block-billed time, including calendaring—an administrative task that should not be compensated at attorney rates—and "auditing" the case file—the meaning or purpose of which neither BMW nor the Court can ascertain. ECF No. 126 at 10–11. BMW neither provides any guidance as to the number of billed hours improperly including such activities nor otherwise suggests a means of reducing the total to account for them. In addition, as Plaintiffs point out, some of the "auditing" time appears plausibly justified by the need to review the history of the case to prepare accurate filings. ECF No. 123 at 11–12. Any remedy would apparently require the Court to arbitrarily select a percentage reduction, painstakingly comb through the record to identify each problematic billing entry (which BMW has not done), total those entries and reduce. The Court declines the invitation.

**3. Pre-Trial Preparation**

BMW attacks the 98.2 hours CCA billed on pretrial preparation, in light of the Court's remarks—discussed later in this order—concerning the poor quality of that preparation. ECF No. 126 at 11. The reply brief makes no attempt to defend these hours. Nonetheless, deducting these hours entirely would be too harsh a remedy. It makes more sense to treat counsel's poor preparation as an additional justification for awarding lower nationwide rates instead of rates drawn from this district.

**4. Trial Travel**

BMW objects to CCA's trial travel, but provides no specific reasons for objecting beyond labeling the sum "unreasonable" and highlighting the lack of evidence that CCA attorneys were "actively working" on the case during their travel hours. ECF No. 126 at 11. Courts in this circuit award fees for travel costs in Song-Beverly cases. *See, e.g.*, *Davenport v. FCA US LLC*, No. 317CV00580AJBBGS, 2021 WL 2012266, at *2 (S.D. Cal. May 20, 2021); *Heffington v. FCA US*

*LLC*, No. 217CV00317DADJLT, 2020 WL 5017610, at *12 (E.D. Cal. Aug. 25, 2020); *see also Bea-Mone v. Silverstein*, No. 817CV00550JLSDFM, 2019 WL 762676, at *3 (C.D. Cal. Feb. 20, 2019) ("It is the custom in the Central District to award attorneys' fees for reasonable travel time."). The Court will not deduct CCA's trial travel.

**5. Rule 50(b) Motion**

BMW raises two objections to CCA's 27 hours spent on opposing the Rule 50(b) motion: that the total hours are "patently unreasonable" and that the attorney present at trial should have taken the lead on opposing the posttrial motion. ECF No. 126 at 12. To be sure, that motion caused the Court significant consternation: it was necessary only because Plaintiffs failed to cite the correct law and Defendants failed to point out the deficiency until the penultimate day of trial, even though both sets of attorneys had extensive experience litigating the precise authority they both failed to raise. ECF No. 114 at 14 n.10. Nonetheless, the Court cannot conclude that either the hours spent or the division of labor between attorneys was wasteful or unreasonable on its face.

BMW also objects to the 23 partner hours spent preparing for oral argument on the motion, on top of the hours spent drafting it. ECF No. 126 at 12. Plaintiffs provide no defense of their time except to say it was "a lot of work" and "reasonable and necessary." ECF No. 123 at 13. By the Court's count, two partners in fact spent 35 and a half hours preparing for and completing oral argument on the motion. ECF No. 120-2 at 19–20. The amount is too high. The Court will deduct 10 partner hours from the time spent preparing to argue the Rule 50(b) motion.

**6. Post-Judgment Enforcement Fees**

Following the jury verdict, Plaintiff's counsel billed over 13 hours researching and drafting a Motion to Enforce Judgment related to vehicle surrender logistics. BMW argues that "[a] simple review of this motion makes clear that 13 hours of work was not necessary to draft this motion." ECF No. 126 at 12. The memorandum of points and authorities comprised a mere six pages of text, which recapped the procedural history of the case and marshaled a small handful of federal rules and relevant precedents. ECF No. 115. CCA once again raises no particular defense in support of the hours it expended. *See* ECF No. 123 at 13. However, the Court's review of the

billing invoice identifies only 8.9 hours spent researching and drafting the motion, all of which were incurred by a partner. In light of the brief and cursory nature of the motion and Plaintiffs' failure to delegate to a more junior attorney, the Court will reduce those 8.9 hours to 4.9.

### C. Lodestar Adjustment

Plaintiffs' counsel seeks a "modest 1.0X enhancement, in the amount of $221,260.00 to account for the exceptional result achieved, delay in payment, and contingent risk posed by this case." ECF No. 120 at 18. They also argue that the complexity of the issues and their own skill justify a robust fee award. *Id*. at 23–24. The request is risible. If anything, the poor performance of Plaintiffs' counsel justifies a downward lodestar adjustment. Because it has already assigned nationwide rates to CCA for work performed in the Bay Area, the Court will refrain from decreasing the lodestar further. Nonetheless, the Court discusses the relevant factors, which provide an additional justification for awarding fees significantly below the amount Plaintiffs seek.

#### 1. Strength of the Result

First, while Plaintiffs' counsel did secure a substantial jury verdict of $207,686.25, ECF No. 93, they nearly forfeited that verdict by relying on statutory provisions governing new cars even though Plaintiffs' car had been purchased used. ECF No. 114 at 2, 9.

#### 2. Delay in Receiving Payment

Next, CCA's delay in receiving payment does not justify a lodestar multiplier under the circumstances. In *Robles v Employment Development Department*, the California Court of Appeal held that "[t]o account for the lengthy delay in obtaining a fee award for the work associated with [the earlier work in this case], the court on remand should use current prevailing hourly rates (or, alternatively, should use lower hourly rates but award interest thereon from the date those services were rendered)." 38 Cal. App. 5th 191, 205 (2019) (citing *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 583–584 (2004)). As the *Robles* court suggests, this Court has accounted for the delay in payment by using current data, even though much of the labor took place during prior years in which the prevailing rates were lower.

United States District Court
Northern District of California

**3. Contingent Risk**

Plaintiffs next argue that a lodestar multiplier is appropriate to account for the contingent risk they assumed.[2] ECF No. 120 at 27–28. "In taking on this representation, CCA agreed to advance thousands of dollars in litigation costs and commit numerous hours of attorney services. CCA assumed the genuine risk that it would not recoup its attorney's fees and costs for several years, if at all." ECF No. 120-1 ¶ 35. Plaintiffs argue that the multiplier should be the inverse of the risk, such that a 50% chance of recovery justifies doubling the lodestar amount. ECF No. 120 at 26. As BMW points out, a significant lodestar multiplier is therefore in tension with Plaintiffs' repeated assertion that this case was a slam-dunk that BMW should have settled immediately. ECF No. 126 at 9. Presumably, a slam-dunk case has a much higher chance of recovery, justifying a much lower multiplier. *See Coles v. City of Oakland*, No. C03-2961 TEH, 2007 WL 39304, at *17 (N.D. Cal. Jan. 4, 2007) ("The fees multiplier will be lower than the merits multiplier, however, given that the contingent risk was not as great as at the outset of this litigation."). And even if a small upwards adjustment would generally be warranted by the contingency fee arrangement here, any effect of the contingency arrangement is more than offset by counsel's poor performance in litigating this case.

**4. Complexity of the Issues**

As BMW argues, "[t]here was nothing novel or difficult about this case and numerous courts have commented that a typical Lemon Law case is not complex." ECF No. 126 at 13; *see Self v. FCA US LLC*, No. 1:17-CV-01107-SKO, 2019 WL 1994459, at *11 (E.D. Cal. May 6, 2019) (finding that, like most lemon law cases, "[t]his case did not present novel or difficult questions of law or fact"); *Scherer v. FCA US, LLC*, No. 20-CV-02009-AJB-BLM, 2022 WL

[2] BMW complains that Plaintiffs "produce[d] no documentation to show that this case was taken on contingency and fail to provide any details about how this contingency fee is calculated," which prevents the court from "ensuring that Plaintiff[s'] [c]ounsel is not in effect 'double dipping' by recovering both a percentage of Plaintiff[s'] recovery and statutory attorney's fees." ECF No. 126 at 8. BMW provides no authority supporting the suggestion that such "double-dipping" provides a basis to reduce the fee award and California courts have rejected the argument. *See Reynolds v. Ford Motor Co.*, 47 Cal. App. 5th 1105, 1116–17 (2020) (analyzing the text and purpose of Section 1794(d) to conclude that courts need not take into account contingency arrangements in awarding attorney's fees under that provision).

22902332, at *8 (S.D. Cal. Oct. 24, 2022) (making the same observation and noting that "this case did not present particularly novel or difficult questions of law or fact and the issues presented in this action were not uniquely complex"); *Morris v. Hyundai Motor America*, 41 Cal. App. 5th 24, 37 (2019), *as modified* (Oct. 11, 2019) (commenting that the case "did not present complex or unique issues"); *Steel v. GMC*, 912 F. Supp. 724, 746 (D. N.J. 1995) ("[T]he issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading").

In their motion, Plaintiffs argue that "this case required a range of specialized knowledge: (1) an understanding of the full scope of consumer protection laws, which are highly nuanced and constantly changing; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations." ECF No. 120 at 23. None of this is particularly complex or challenging. Were the simplicity of the case not already accounted for in the hourly rate assigned to CCA's attorneys,[3] it would further justify a downwards adjustment.

**5. Skill of the Attorneys Involved**

This case was remarkably poorly litigated. Most significantly, counsel for BMW notified the Court on the penultimate day of trial that the statutes under which Plaintiffs' counsel had pursued their claims—and on which both parties had based their jury instructions—did not apply to the subject vehicle. The error was blatant: in a case about a used motor vehicle, Plaintiffs' counsel had exclusively cited law governing new vehicles. In remarks delivered to counsel the next day, the Court noted that it was "taken aback by counsel's willful failure on both sides to

[3] In California, the complexity of the issues may be used to adjust the lodestar, but only if any complexity is not already accounted for by the lodestar itself. In other words, the lodestar adjustment process must avoid accounting for the same factors twice. *See Pearson v. Green Tree Servicing, LLC*, No. 14-CV-04524-JSC, 2015 WL 632457, at *12 (N.D. Cal. Feb. 13, 2015) ("California courts have made clear that in assessing a request for a lodestar enhancement, 'a court should *not* consider contingent risk or exceptional skill to the extent these factors are already encompassed within the lodestar[,]' for when the hourly fee and number of hours billed already reflect the risk, attorneys' skill, and complexity of the issues, enhancing the lodestar for the same reason 'would result in unfair double-counting.'" (citation omitted)).

provide the court with relevant, controlling authority on a legal issue presented by this case. ECF No. 88 at 74. As the Court went to note, in 23 years on the bench, the Court had never before been misled into instructing a jury on the law that counsel knew was inaccurate. *Id.* That error then produced a motion for new trial, consuming both the parties' and the Court's resources. ECF No. 98. The Court ultimately left the verdict undisturbed because another section of Song-Beverly applied most of its new vehicle provisions to used motor vehicles. ECF No. 114 at 4. Nor was that the only deficiency in counsel's performance. In the order adjudicating the motion for a new trial, the Court noted that "[b]oth sides in this case came barreling into court on the day of trial having done very little pretrial preparation, armed with reused sets of motions in limine and jury instructions that fit poorly or not at all the facts of the specific case they were trying." ECF No. 114 at 15.

The quality of the present motion also highlights the poor preparation, effort, and skill which CCA has brought to bear on this case. The Court has already identified the first example: CCA misapplied *Horsford* for a proposition it does not support, even though these precise attorneys have been corrected on that very issue by at least one court. Then CCA reversed course in their reply and argued that San Francisco Bay Area rates should govern without acknowledging the change in position or providing any useful evidence speaking to what those rates are.

As a second example, CCA devote a page and a half of their motion arguing that the low settlement amount should not limit the fee award. ECF No. 120 at 25–26 ("Defendant may argue that the settlement amount does not justify an attorneys' fees sought by Plaintiffs."). Plaintiffs even tout the amount of the settlement as an example of their legal skill. ECF No. 120 at 24 ("Due to this experience and expertise, the Plaintiffs secured a large settlement, despite BMW's vigorous defense."). But this section of Plaintiffs' motion can only be another copy-and-paste job, because *there was no settlement in this case*—it was litigated to verdict. Plaintiffs' choice to again reuse motions "that fit poorly or not at all the facts of the specific case" is especially galling given the Court's prior admonition against that exact behavior.

These errors are diverse, significant, and abundant, spanning the failure to cite the correct law or provide the Court with governing precedent, making basic misstatements of the facts, and

United States District Court
Northern District of California

completely disregarding the orders of other courts calling out misused precedents. To the extent that Plaintiffs' counsel's "experience allows them to develop litigation strategies that are highly effective and cost efficient," as they assert, they apparently failed to use those skills here. ECF No. 120 at 24. Had the Court been presented with evidence of Bay Area rates and adopted them, it would have decreased those Bay Area rates commensurate with counsel's deeply deficient performance and reached the same result.

**D. Costs and Expenses**

Section 1794(d) allows a prevailing buyer to "recover a sum equal to the aggregate amount of costs and expenses . . . reasonably incurred by the buyer in connection with the commencement and prosecution of such action." *See also Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 137–38 (1995). BMW does not dispute that costs and expenses are recoverable, but objects that the detail provided is insufficient to allow it to assess whether those enumerated by Defendants were reasonably incurred. ECF No. 126 at 14 (citing *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)). Plaintiffs provide an itemized list of costs and expenses including the date, description, and amount of each. ECF No. 120-2 at 21–23. Courts in this district have found such information in a sworn affidavit to be sufficient. *See, e.g., Bell v. Williams*, No. 18-CV-01245-SI, 2023 WL 4850761, at *10 (N.D. Cal. July 28, 2023) ("Defendants also object that the Court should not award the costs that were not included in the Bill of Costs, and that the costs are not documented by invoices. . . . The Court finds that the sworn [counsel] declarations are sufficient proof as to the claimed costs.").

In addition, BMW provides only two examples of insufficiently described costs. First is $1,299 in "hotel, airfare, and rental" for a four-day jury trial in the Bay Area, which is (1) a patently reasonable sum, and (2) further segmented into restaurant receipts, hotel stays, and flights by attorney. ECF No. 120-2 at 22–23. Second, they contest the $7,040 expenditure for Plaintiffs' expert. While high, it is not clear that the sum is unreasonable. Nor is it clear what further information would help BMW or the Court determine that the sum is unreasonable. Because Plaintiffs have provided a moderately detailed itemized list of costs reasonably incurred in connection with this litigation, and BMW has identified no deficiencies, the Court exercises its

United States District Court
Northern District of California

discretion to award the full amount of costs sought.

## CONCLUSION

Plaintiffs seek the following fees, costs, and expenses:

| Attorney's Fees | Position | Rate | Hours | Total |
| --- | --- | --- | --- | --- |
| Sepehr Daghighian | Partner | $625.00 | 137 | $85,625.00 |
| Brian Murray | Senior Assoc. | $550.00 | 57.8 | $31,790.00 |
| Bill Oppenheim | Associate | $350.00 | 43.4 | $15,190.00 |
| Miguel Ortiz | Associate | $525.00 | 17 | $8,925.00 |
| Michael Rosenstein | Partner | $700.00 | 113.9 | $79,730.00 |
| Lodestar Multiplier | | | | x 2.0 |
| Subtotal | | | | $442,520.00 |
| Costs and Expenses | | | | $17,248.87 |
| **Total** | | | | $459,768.87 |

In this order, the Court (1) reduces the billing rates for partners and associates to $395 and $225, respectively; (2) deducts ten hours from those Sepehr Daghighian spent preparing for oral argument on the Rule 50(b) motion and four from those preparing the motion to enforce the judgment; (3) otherwise accepts the fees and costs sought by Plaintiffs; and (4) declines to apply a lodestar multiplier. The Court also deducts a prospective 2.5 hours anticipated to be billed by Sepehr Daghighian for preparation for the hearing on this fee's motion, because the Court vacated that hearing. ECF No. 120-2 at 21. The total award amount is therefore as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

| Attorney's Fees | Position | Rate | Hours | Total |
|---|---|---|---|---|
| Sepehr Daghighian | Partner | $395.00 | 120.5 | $47,597.50 |
| Brian Murray | Senior Assoc. | $225.00 | 57.8 | $13,005.00 |
| Bill Oppenheim | Associate | $225.00 | 43.4 | $9,765.00 |
| Miguel Ortiz | Associate | $225.00 | 17 | $3,825.00 |
| Michael Rosenstein | Partner | $395.00 | 113.9 | $44,990.50 |
| **Lodestar Multiplier** | | | | x 1 (none) |
| **Subtotal** | | | | $119,183.00 |
| **Costs and Expenses** | | | | $17,248.87 |
| **Total** | | | | $136,431.87 |

While the fee award is significantly lower than Plaintiffs sought, it is substantiated both by (1) Plaintiffs' failure to meet their burden to justify the amount, including by failing to present any evidence of Bay Area hourly rates for lemon law attorneys and (2) their substandard performance litigating this case.

**IT IS SO ORDERED.**

Dated: November 18, 2026

JON S. TIGAR
United States District Judge